UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
LEISURE DIRECT, INC.,                    :    Case No. ___CV-2005___

                    Plaintiff,           :    **COMPLAINT**

          -against-                      :    **JURY TRIAL DEMANDED**

GLENDALE CAPITAL, LLC, GEORGE
LASAKO, JOE LONGO, and DAVID
W. PARSONS, ESQ.,                        :

                    Defendants.          :
----------------------------------------X

          Plaintiff Leisure Direct, Inc. ("Leisure"), by its

attorneys, Krol & O'Connor, for Leisure's complaint, states,

upon information and belief, as follows:

### JURISDICTION

          1.     This court has jurisdiction under 28 U.S.C. §

1332.

          2.     Venue is proper in the Eastern District of New

York under 28 U.S.C. § 1391(a).

### THE PARTIES

          3.     Leisure is a Nevada corporation with the office

and principal place of business located at 1070 Commerce Drive,

Building II, Suite 303, in Perrysburg, Ohio.

          4.     Defendant Glendale Capital, LLC ("Glendale"), is

a New York limited liability company with an office and a place

of business located at 511 Neckar Avenue, Staten Island, New

York 10304.

5.    Defendants  Joseph  Longo  ("Longo")  and  George
Lasako ("Lasako") are principals of Glendale.

6. Defendant David W. Parsons is an attorney at law
with an office and a place of business in Baldwin, New York.

**Background Facts**

7. A public company since 2001, Leisure started its
business operations in February 2004. Leisure's common stock has
been quoted on the OTC Bulletin Board since September 30, 2004.

8.    On  December  7,  2004,  Leisure  retained  MFG
Securities of Sparta, New Jersey, an investment bank firm, to
aid Leisure in locating additional sources of capital. MFG in
turn introduced Leisure to Mr. Parsons and Glendale, and billed
Glendale  as  an  investor  relations  firm  capable  of  bringing
Leisure to the attention of potential investors.

9. On April 7, 2005, Leisure retained Glendale to
improve Leisure's public relations and corporate communications,
and to distribute information about Leisure to the investing
public over a period of three (3) months, commencing April 11,
2005 and ending July 11, 2005 (the "Agreement"). A copy of the
Agreement is attached hereto as Exhibit A.

10. To compensate Glendale, Leisure granted Glendale
an option to purchase 750,000 shares of Leisure's common stock
at the price of $1.75 per share (the "Leisure Stock"). At the
time, Leisure's common stock was trading at $3.45.

2

11. For convenience of the parties – Leisure is in Ohio and Glendale is in New York – the parties agreed to place the Leisure Stock in escrow with Mr. Parsons, MFG's attorney, for a period of three (3) months set forth in the Agreement. Mr. Parsons agreed to hold the Leisure Stock in escrow until Glendale exercised the option and paid Mr. Parsons, on Leisure's behalf, $1.75 per share.

12. Mr. Parsons failed to hold the Leisure Stock in escrow. Instead, Mr. Parsons allowed Glendale to trade the Leisure Stock even though Glendale paid nothing for such stock to Mr. Parsons on Leisure's behalf. Worse still, Glendale promptly dumped the Leisure Stock on the open market at prices as low as $.30 per share. Leisure's market capitalization promptly dropped, causing Leisure immediate – and unforeseen – damages, both in terms of public perception of the stock and Leisure's ability to obtain additional sources of capital. (All capital transactions are pegged to the market value of capital stock.)

13. Leisure immediately complained to MFG, Mr. Parsons, brokerage houses, clearing houses, etc., but to no avail. On July 20, 2005, the conference call among all concerned failed to stop Glendale from dumping the Leisure Stock on the open market, and Leisure went to court in Ohio, where it obtained a TRO. A copy is attached hereto as Exhibit B.

3

14. Glendale's assault on Leisure's common stock stopped then and there, but not for long. On Friday, September 16, 2005, the Ohio Court of Common Pleas dissolved the injunction for lack of *in personam* jurisdiction over Glendale, and left Leisure no choice but to seek relief from this Court.

15. Plaintiff estimates that Glendale has, so far, sold roughly 69,000 shares of Leisure's common stock at prices well below $1.75, the option price, thereby driving the price of Leisure's common stock down to $.50, effectively eviscerating Leisure's market capitalization, denying Leisure's access to sources of capital and causing Leisure to abandon its current business plan. Worse still, Glendale has retained access to, and the ability to sell, the remainder of the Leisure Stock.

### FIRST CLAIM AGAINST DAVID W. PARSONS

16. Leisure repeats and re-alleges the allegations set forth in paragraphs 1 through 15 as if fully set forth herein.

17. David W. Parsons breached his fiduciary duty to plaintiff by releasing the Leisure Stock from escrow without obtaining the payment of the option price from Glendale and thereby caused damage to Leisure in the amount to be determined at trial, but in no event less than $75,000.

### SECOND CLAIM AGAINST GLENDALE

18. Leisure repeats and re-alleges the allegations set forth in paragraphs 1 through 15 and 17 as if fully set forth herein.

4

19. Glendale converted the Leisure Stock to its own use with intent to sell, and did sell roughly 69,000 shares of the Leisure Stock, and appropriated the profits for itself.

20. By reason thereof, Glendale caused damage to Leisure in an amount to be determined at trial, but in no event less than $75,000.

### THIRD CLAIM AGAINST GLENDALE

21. Leisure repeats and re-alleges the allegations set forth in paragraphs 1 through 15, 17, and 19 as if fully set forth herein.

22. Glendale has deliberately and with malice aforethought dumped the Leisure Stock on the open market at prices well below the market price, causing Leisure's market capitalization to decline by roughly $49.4 Million.

23. By reason thereof, Glendale caused damage to Leisure in an amount to be determined at trial, but in no event less than $75,000.

### FOURTH CLAIM AGAINST GLENDALE

24. Leisure repeats and re-alleges the allegations set forth in paragraphs 1 through 15, 17, 19 and 22 as if fully set forth herein.

25. By obtaining and selling the Leisure Stock without paying the option price for such stock, Glendale breached the Agreement and caused damages to Leisure.

5

26. By reason thereof, Glendale caused damage to Leisure in an amount to be determined at trial, but in no event less than $75,000.

**FIFTH CLAIM AGAINST ALL DEFENDANTS**

27. Leisure repeats and re-alleges the allegations set forth in paragraphs 1 through 15, 17, 19, 22 and 25 as if fully set forth herein.

28. Unless defendants are permanently enjoined from selling and otherwise dealing in the Leisure Stock, Leisure will be irreparably harmed and driven out of business altogether.

WHEREFORE, plaintiff seeks judgment (i) enjoining permanently defendants, and anyone holding the Leisure Stock in the name of the defendants, from transferring any of the Leisure Stock to anyone other than Leisure Direct, Inc., (ii) awarding plaintiff compensatory damages in an amount to be proven at trial, together with appropriate punitive damages, as well as plaintiff's costs, fees, and disbursements, and (iii) granting plaintiff such other and further relief as the Court may deem just and proper under the circumstances.

Dated:     New York, New York
           September 19, 2005

                          KROL & O'CONNOR
                          Attorneys for Plaintiff
                          320 West 81st Street
                          New York, N.Y. 10024
                          (212) 595-8009

                          By: _____
                              Igor Krol (IK 1068)

6

COMPLAINT EXHIBIT A
Ayling Affidavit Exhibit A

### GLENDALE CAPITAL LLC
511 Neckar Avenue
Staten Island, NY 10304

April 7, 2005

Leisure Direct, Inc.
1070 Commerce Drive
Building 2, Suite 303
Perrysburg, OH 43551

Attention:   John Ayling

Dear Mr. Ayling:

We are pleased to set forth the terms of the retention of Glendale Capital LLC, of 511 Neckar Avenue, Staten Island, New York 10304 (the "Consultant"), by Leisure Direct, Inc., an Ohio corporation (collectively with its affiliates, the "Company").

1.    (a)    Consultant will assist the Company as a nonexclusive advisor in connection with the Company's public relations and corporate communications, so as to better, more fully and more effectively deal and communicate with its stockholders and the investment banking, investment, and financial communities (collectively, the "Investment Community"). In connection with Consultant's activities on the Company's behalf, Consultant will familiarize itself with the business, operations, properties, financial condition and prospects of the Company. In connection with Consultant's role as the Company's financial advisor, Consultant would expect its services to include preparation of research relating to the Company, its business, prospects, financial condition, and results of operations, the effective distribution and communication of such research to the Investment Community, the assistance of the Company with the preparation and distribution of other corporate communications, including press releases, as well as such other services as may be mutually agreed upon by Consultant and the Company, and the development, implementation and maintenance of an ongoing program to increase the Investment Community's awareness of the Company's activities and to stimulate the Investment Community's interest in the Company. Consultant agrees that, among other corporate communications, it shall prepare, with the assistance of the Company, a written research report in form and substance reasonably acceptable to the Company for distribution to the Investment Community within ten days of the date hereof, which report shall be promptly distributed to the Investment Community thereafter, and shall update and redistribute such report not less often than monthly. The Company acknowledges that Consultant will devote such time as is reasonably necessary to perform the services for the Company, having due regard for Consultant's

commitments and obligations to other businesses for which it performs consulting services.

     (b)    This Agreement shall be for a period of three (3) months commencing April 11, 2005 and terminating June 11, 2005.

2.    (a)    In connection with Consultant's activities on the Company's behalf, the Company will cooperate with Consultant and will furnish Consultant with all information and data concerning the Company, its subsidiaries, and affiliates (the "Information") which Consultant deems appropriate and will provide Consultant with access to the Company's officers, directors, employees, independent accountants, and legal counsel. The Company represents and warrants that all Information made available to Consultant by the Company will, at all times during the period of engagement of Consultant hereunder, will be complete and correct in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in the light of the circumstances under which such statements are made. The Company further represents and warrants that any projections provided by it to Consultant will have been prepared in good faith and will be based upon assumptions which, in light of the circumstances under which they are made, are reasonable. The Company acknowledges and agrees that, in rendering its services hereunder, Consultant will be using and relying on the Information without independent verification thereof by Consultant or independent appraisal by Consultant of any of the Company's assets. Consultant does not assume responsibility regarding the Company, its subsidiaries, and affiliates. Any advice rendered by Consultant pursuant to this Agreement may not be disclosed publicly without the Company's prior written consent.

     (b)    Consultant shall not disclose, without the consent of the Company, any Information which is delivered by the Company to Consultant in connection with Consultant's services hereunder, except information which has been theretofore filed publicly or which is a matter of public record (the "Confidential Information"). Consultant will not be bound by the foregoing limitation in the event (i) the Confidential Information is otherwise disseminated and becomes public information or (ii) the Company is required to disclose the Confidential Informational pursuant to applicable, law, rules, regulations, a subpoena, or other judicial or administrative order or process.

3.    In consideration of Consultant's services pursuant to this Agreement, Consultant shall be entitled to receive, and the Company agrees to pay Consultant, the following compensation:

     Options, vested immediately upon the execution hereof, and exercisable for the following 90 days, to purchase up to seven hundred and fifty thousand (750,000) shares (the "Shares") of common stock, par value $0.001 per share, of the Company, at the price of $1.75 per share. The price or the quantity of shares shall be adjusted in such a manner as to protect Consultant from suffering any dilution of its interests in the Company as at the date hereof, as if such options were exercised in full immediately, for the option period in the event of (i) the declaration of dividends on the outstanding common stock

payable in shares of its capital stock; (ii) subdivision of the outstanding common stock; (iii) combination of the outstanding common stock into a smaller number of shares; or (iv) issuance of any shares of its capital stock by reclassification of the common stock (including any such reclassification in connection with a consolidation or merger in which the Company is the continuing corporation).

4.    It is expressly agreed that Consultant is acting as an independent contractor in performing its services hereunder. The Company shall carry no workers compensation insurance or any health or accident insurance on Consultant or Consultant's employees. Consultant shall not pay any contributions to social security, unemployment insurance, Federal or state withholding taxes nor provide any other contributions or benefits which might be customary in an employer-employee relationship.

5.    This Agreement shall not be assigned by either party without the written consent of the other party.

6.    Any notice to be given by either party to the other hereunder shall be sufficient if in writing and sent by registered or certified mail, return receipt requested, addressed to such party at the address specified on the first page of this Agreement or such other address as either party may have given to the other in writing.

7.    This Agreement contains the entire agreement and understanding between the parties and supersedes all prior negotiations, agreements, and discussions concerning the subject matter hereof.

8.    This Agreement may not be altered or modified except by writing signed by each of the respective parties hereto. No breach or violation of this Agreement shall be waived except in writing executed by the party granting such waiver.

9.    The validity and interpretation of this Agreement shall be governed by the law of the State of New York applicable to agreements made and to be fully performed therein.

10.    The benefits of this Agreement shall inure to the respective successors and assigns of the parties hereto and of the indemnified parties hereunder and their successors and assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns.

11.    For the convenience of the parties hereto, any number of counterparts of this Agreement may be executed by the parties hereto. Each such counterpart shall be, and shall be deemed to be, an original instrument, but all such counterparts taken together shall constitute one and the same Agreement. This Agreement may not be modified or amended except in writing signed by the parties hereto.

If the foregoing correctly sets forth our Agreement, please sign the enclosed copy of this letter in the space provided and return it to us.

Very truly yours,

**Glendale Capital LLC**

By: _Joseph Longo_
Name:
Title: *president*

Confirmed and Agreed to:
this 7ᵗʰ th day of April _____, 2005

Leisure Direct, Inc.

By: _John Ay_
Name:
Title: CHAIRMAN



FILED
LUCAS COUNTY

2005 AUG -9 P 4: 14

COMMON PLEAS COURT
BERNIE QUILTER
CLERK OF COURTS

## IN THE COURT OF COMMON PLEAS, LUCAS COUNTY, OHIO

Leisure Direct, Inc.     }
500 Fassett Street       }
Toledo, OH  43605        }     Case No.: ___CI0260504645___
                         }
Plaintiff                }     Judge: _____
                         }     ~~ASSIGNED TO JUDGE OSOWIK~~
          vs.            }     **TEMPORARY RESTRAINING ORDER**
                         }     **AND PRELIMINARY INJUNCTION**
                         }
Glendale Capital, LLC,   }     N. Stevens Newcomer, Esq. (0012978)
                         }     Michael D. Slates, Esq. (0078590)
et al.                   }     Counsel for Plaintiff
                         }     P.O. Box 673
                         }     Perrysburg, OH  43552
                         }     419-467-5360  Telephone
                         }     419-874-3222  Telefax
                         }
Defendants.              }

### ORDER FOR TEMPORARY INJUNCTION AND PRELIMINARY

### INJUNCTION

The Court, being fully advised in the premises, finds and decrees:

1. Defendants, Glendale Capital, LLC, George Lasako and Joe Longo are hereby enjoined from transferring any shares of the common stock of Plaintiff, Leisure Direct, Inc., until further Order of the Court.

2. Anyone holding shares of the common stock of Plaintiff, Leisure Direct, Inc., in the name of Glendale Capital, LLC, George Lasako or Joe Longe, are prohibited from transferring any shares of common stock of Plaintiff until further Order of this Court.

_____
Judge